# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

James D. Farley, Jr., by and
through his next friend and
guardian, Linda Cherry, and Linda
Cherry, individually,

                    Case No. 1:16-cv-02754

                Plaintiffs,

                    Michael L. Brown
v.                    United States District Judge

J.L. Stephens, et al.,

                Defendants.

_____/

## OPINION & ORDER

Defendant DeKalb County Police Officers arrested Plaintiff James D. Farley, Jr. late one night in August 2014 while he was riding his bike in and around a Kroger parking lot. Mr. Farley claims the officers hit him with a patrol car, beat him, tased him, and denied him medical assistance. Defendants tell a different story, claiming Plaintiff Farley rode his bicycle into a police vehicle while evading arrest and then attacked one of them.

Plaintiff, along with his mother and guardian, Plaintiff Linda Cherry, sued Defendants for violating Mr. Farley's constitutional rights and Georgia law. The Court granted Defendants' motion to dismiss several claims but allowed others to continue. (Dkt. 28 at 43.) At the close of discovery, Defendants moved for summary judgment on the remaining claims. (Dkt. 60.) The Court grants in part and denies in part Defendants' motion.

## I. Factual Background

On the afternoon of August 3, 2014, Mr. Farley was riding his bike around his neighborhood. (Dkt. 60-3 ¶ 4.) By about 8:00 p.m., he found himself at a Kroger where he stayed for several hours, riding around the parking lot and watching people. (*Id.* ¶¶ 5–7.) At about 1:30 a.m., someone called the DeKalb County Police Department and reported a male subject riding in the lot and looking into vehicles. (*Id.* ¶ 8.) Defendant Officer Stephens responded to the scene first. (*Id.* ¶ 9.) He then called for backup, and Defendant Officers Benjamin and Reynolds arrived. (*Id.* ¶ 10.)

Officer Stephens found Mr. Farley riding his bike in Covington Highway and asked him what he was doing. (*Id.* ¶ 18.) The parties

dispute what happened next. The officers say they tried to stop Mr. Farley from riding his bike in the middle of the street by blocking his bike with their patrol cars. (Dkts. 60-2 at 47, ¶ 5; 60-4 at 40.) They say he ignored their commands to stop and tried maneuvering around their cars. (Dkt. 60-2 at 48, ¶¶ 5, 7–8.) They claim he rode "straight at" Officer Benjamin, causing her to extend her arm in an attempt to push him away. (*Id.* at 41, ¶ 7; 48, ¶ 9.) The officers say that Mr. Farley lost control of his bike, rode into Officer Benjamin's car, flipped over the hood, and fell to the ground. (*Id.* at 40, ¶¶ 5–6; 48, ¶ 10.) According to Defendants, Mr. Farley stood up and "charged" at Officer Benjamin, striking her in the face and knocking off her glasses. (*Id.* at 41, ¶ 7; 48, ¶ 11.) The two other officers moved to protect Officer Benjamin and subdue Mr. Farley. (*Id.* at 48, ¶ 12.) They claim Officer Reynolds tried to tase him twice, but the weapon malfunctioned, causing Farley to charge him. (*Id.* at 41, ¶¶ 11–17; 48, ¶ 13.) Officer Reynolds eventually tased Mr. Farley, causing him to fall to the ground. (Dkt. 60-3 ¶ 25.) He continued to struggle, but Officers Reynolds and Stephens subdued him and placed him under arrest. (Dkt. 60-2 at 41, ¶ 17.)

Mr. Farley describes the ordeal differently. He says Defendant Officer Stephens ordered him to ride his bike across Covington Highway so they could speak. (Dkt. 67-7 ¶ 12.) He claims that while complying, a second officer drove up, ran into him with his police car, and knocked him to the ground. (*Id.* ¶ 8.) Mr. Farley testified that the "officers beat, hit, knocked and tasered him while on the ground after being hit with a police car." (Dkt. 66 ¶ 9.) He also testified that he never tried to run or flee the scene but the officers punched and beat him in the face. (*Id.* ¶¶ 11, 14.) He claims that he never resisted them in any way but they began hitting him while he was still on the ground. (Dkts. 62-1 at 57:9-16; 67-4 at 17.) He insists that the officers beat, tased, and punched him in the stomach after he was already on the ground and not fighting against them. (Dkt. 68-1 ¶ 17.) He claims that he suffered serious injuries, including broken teeth, lacerations, and bruises. (Dkts. 62 at 58:7–22; 67 at 15.)

Mr. Farley also testified that he was already on the ground when Officer Benjamin arrived on the scene. (Dkts. 62-1 at 45:17–22; 67-4 at 14.) He testified that she "came last after everything, after everything happened." (Dkt. 62-1 at 45:17–22.) He testified that he believed the "lady" arrived "after they beat me up." (Dkts. 67-4 at 14; 62-1 at 43:15–

17.)  According to Mr. Farley, Officer Benjamin neither hit him with her car nor beat him in any way.  (Dkt. 62-1 at 43:15–17.)

The parties agree that one of the officers called an ambulance to the scene, but emergency personnel cleared Mr. Farley without taking him to a hospital or even treating his injuries.  (Dkt. 60-4 at 42.)  Mr. Farley testified that he saw an ambulance, the medics saw him, but they did not pick him up or render any care.  (Dkts. 66 ¶ 15; 67-4 at 15.)  The parties agree he saw a saw a doctor once booked into the jail.  (Dkt. 60-4 at 42.)[1]

Plaintiff Linda Cherry, Mr. Farley's mother, admits that she did not see Plaintiff Farley until two weeks after the encounter with Defendants and does not have personal knowledge about what caused his injuries, nor personal knowledge of the encounter between Mr. Farley and Defendants.  (Dkt. 60-3 ¶¶ 29–30.)

Defendants moved to dismiss Plaintiffs' complaint, which the Court granted in part and denied in part.  (Dkt. 28.)  Plaintiffs then improperly

---

[1] Plaintiff Farley acknowledges that he suffers from schizophrenia and was receiving treatment and taking at least two types of medication for his mental illness several times a day before the August 3, 2014, incident. (Dkts. 60-3 ¶ 2; 66 ¶ 6.)  He also admits that he should have taken his prescribed schizophrenia medication before leaving his house on the day of the incident.  (Dkt. 60-3 ¶ 3.)  He claims he did so.  This issue is irrelevant to the Court's determination at summary judgment.

filed an amended complaint adding claims.  (Dkt. 37.)  Because Plaintiffs filed the second amended complaint in violation of Federal Rule of Civil Procedure 15 without leave of the Court or the consent of the opposing party, the Court takes no action on Plaintiffs' later complaint and instead considers only the operative complaint, the amended complaint filed on September 27, 2016.  *See Hoover v. Blue Cross and Blue Shield of Ala.*, 855 F.2d 1538, 1544 (11th Cir. 1988) (holding that district court properly treated second amended complaint as a nullity where it was filed without leave of court or consent of opposing party).

## II.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might

affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact that a jury should decide at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A moving party meets this burden merely by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The movant, however, need not negate the other party's claim. *Id.* at 323. In determining whether the moving party has met this burden, a court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant has adequately supported its motion, the nonmoving party then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986). Ultimately, there is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. The court, however, resolves all reasonable doubts in the favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Additionally, "[i]t is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

## III.  Discussion

Remaining here are these five claims against Officers Stephens, Reynolds, and Benjamin in their individual capacities: (1) Count Two – Eighth Amendment claim of failure to render aid under 42 U.S.C. § 1983; (2) Count Three – Fourth Amendment claim of excessive force under 42 U.S.C. § 1983; (3) Count Five – claim for attorneys' fees under 42 U.S.C. § 1988; (4) Count Six – state-law claim for assault and battery;

and (5) Count Nine – state-law claim for intentional infliction of emotional distress.  (Dkt. 28 at 43.)

## A.     Federal Claims & Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (internal quotation marks omitted).  So "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  Qualified immunity allows officials to "carry out their discretionary duties without the fear of personal liability or harassing litigation."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  When properly applied, qualified immunity thus "protects all but the plainly incompetent or those who knowingly violate the law."  *al-Kidd*, 563 U.S. at 743 (internal quotation marks omitted).

Qualified immunity may attach only when the officer is "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  *Grider v. City of Auburn*, 618 F.3d 1240, 1254

n.19 (11th Cir. 2010). A public official acts within the scope of his discretionary authority where the acts complained of were "undertaken pursuant to the performance of his duties and within the scope of his authority." *See Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir. 1988). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. The parties agree Defendants acted within the scope of their discretionary authority when arresting Mr. Farley. *See, e.g.*, *Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016) (holding that officers acted within discretionary authority when arresting suspect). Plaintiffs, thus, have the burden of showing that qualified immunity is unavailable to Defendants.

The qualified immunity analysis presents two questions: first, whether the allegations, taken as true, establish the violation of a constitutional right; and second, if so, whether the constitutional right was clearly established when the violation occurred. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). These distinct questions "do not have to be analyzed sequentially; if the law was not clearly established,

[the court] need not decide if the [d]efendants actually violated the [plaintiff's] rights, although [the court is] permitted to do so." *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011).

The burden thus lies with Plaintiffs to show that Defendants' actions violated a constitutional right and that the right was clearly established at the time of the arrest. *See Hadley*, 526 F.3d at 1329.

### 1. Count Two – Deliberate Indifference Claim

The Court construes Count Two of Plaintiffs' amended complaint as a claim for deliberate indifference to a serious medical need under the Fourteenth Amendment. (Dkt. 28 at 24.) Defendants moved for summary judgment on this claim arguing they are entitled to qualified immunity. (Dkt. 60-1 at 11–13.) Plaintiffs failed to respond to this argument. The Court still considered the merits of Defendants' motion, however. *See United States v. One Piece of Real Property Located at 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[S]ummary judgment, even when unopposed, can only be entered when 'appropriate.' ").

To prevail on a § 1983 claim of deliberate indifference, a plaintiff must show three things: "(1) a serious medical need; (2) a defendant's

deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016). The second factor — deliberate indifference — consists of three subcomponents: (1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk; (3) by conduct that is more than mere negligence. *Jackson v. West*, 787 F.3d 1345, 1353 (11th Cir. 2015). To avoid summary judgment on a claim for deliberate indifference, a plaintiff must present evidence of each element.

Plaintiffs have presented no evidence suggesting Defendants knew Mr. Farley faced a risk of serious injury, disregarded that risk, or (if they did) acted with anything more than negligence. It is undisputed that they called an ambulance to the scene of the arrest. (Dkts. 60-3 ¶ 26; 66 ¶ 15.) Paramedics came and saw Plaintiff Farley.[2] (Dkts. 60-3 ¶ 26; 66 ¶¶ 15, 18.) There is also undisputed evidence that, after arriving at the DeKalb County Jail, Mr. Farley saw at least one doctor. (Dkts. 60-3 ¶ 27; 66 ¶ 20.)

---

[2] Mr. Farley claims that he was not rendered proper medical care by the paramedics but given that he makes no allegations against the paramedics, this dispute is immaterial to the Court's summary judgment determination.

The record contains no evidence Defendants ignored Mr. Farley's need for medical treatment at the scene. Indeed, Plaintiffs' allegations in the amended complaint appear to focus on his treatment (or lack of treatment) while at the jail. It is undisputed, however, that these Defendants had no responsibility for providing or ability to render aid to Mr. Farley after they booked him into the jail. (Dkt. 60-3 ¶ 35.) The Court thus concludes that Defendants are entitled to qualified immunity on Plaintiffs' deliberate indifference claim, and grants Defendants summary judgment on it.

### 2. Count Three – Excessive Force Claim

#### a. Violation of a Constitutional Right

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee*, 284 F.3d at 1197. The Fourth Amendment's "objective reasonableness" standard governs whether a constitutional violation occurred. *See Hadley*, 526 F.3d at 1329. At the same time, "the right [of police] to make an arrest necessarily carries with it the right to use some degree of physical

coercion or threat thereof to effect it." *Lee*, 284 F.3d at 1200 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

In balancing an officer's need to use force in making an arrest or conducting an investigatory stop versus an individual's Fourth Amendment rights, the Court must consider the severity of the crime being investigated, whether the suspect poses an immediate threat to the officer's safety, and whether the suspect is resisting the officer's attempt to make an arrest or conduct an investigatory stop. *Id.* at 1197–98. The force used must be "reasonably proportionate" to the need for force considering these factors. *Id.* at 1198. The Eleventh Circuit has also said that, in determining whether an officer's use of force was objectively reasonable, courts may consider "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted, and (4) whether the force was applied in good faith or maliciously and sadistically." *See Hadley*, 526 F.3d at 1329 (quoting *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000)).

While the Court recognizes that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree

of physical coercion or threat thereof to effect it," hitting a suspect with a patrol car goes far beyond that limit. *See Lee*, 284 F.3d at 1197 (quoting *Graham*, 490 U.S. at 396). The parties' vast dispute about the circumstances prompting Mr. Farley's arrest thus precludes summary judgment. Defendants contend he rode his bike into one of their patrol cars and then attacked them. Mr. Farley testified that one of the officers purposefully ran into him with a car and then two of them beat him severely. (Dkt. 62-1 at 42:10–17.) He claims he never resisted arrest or ignored any of their demands. He says they beat him while he was lying on the ground.[3]

The Court cannot make credibility determinations about who is telling the truth. The Court simply has no authority to "weigh conflicting evidence or to make credibility determinations." *Mize*, 93 F.3d at 742.

---

[3] In responding to Defendants' motion for summary judgment, Mr. Farley claims that, when the officers tried to pick him up from the ground, he became confused and "attempted to defend himself by swinging his arms, striking an officer in the process" and thus causing the officers to beat, kick, and tase him. (Dkt. 67 at 4.) In support of this allegation, he cites only his amended complaint. (*Id.*) Mr. Farley, however, testified that he never swung at an officer, and that the officers beat him while he was on the ground and not resisting. (Dkts. 67-4 at 14-17; 62-1 at 43-57.) At summary judgment, the Court holds Plaintiff Farley to the evidence; not unsupported allegations.

Instead, the Court must accept all of Plaintiffs' evidence as true while evaluating Defendants' motion for summary judgment. *Id.* ("[T]he non-movant's evidence is to be accepted for purposes of summary judgment."); *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007) (recognizing that district court "misapplied the clear dictates of our summary judgment law by assuming hotly contested facts against the non-moving party"). A jury as the trier of fact must make credibility determinations, not a court at the summary judgment stage. *Skop*, 485 F.3d at 1141*; see Lee*, 284 F.3d at 1191 n.1 (explaining that plaintiff's testimony "must be accepted in analyzing a claim of qualified immunity on summary judgment" in excessive force case).

So the Court decides this matter with the (temporary) assumption that the officers were not trying to arrest him but rather wanted to speak with him, that Officer Reynolds intentionally ran into him with his patrol car, and that both he and Officer Stephens kicked and punched him while he was lying on the ground.[4] The use of that force was objectively

---

[4] Plaintiff Farley does not identify Officer Reynolds as the officer who ran into him. The Court reaches this conclusion by accepting the evidence in the light most favorable to Plaintiff Farley as the non-movant. The undisputed evidence establishes that three officers arrived at the scene

unreasonable in this circumstance. *See Hadley*, 526 F.3d at 1330 ("[E]xcessive force is judged solely on an objective basis."). The factors the Eleventh Circuit identified as relevant in assessing the reasonableness of force weigh against Officers Stephens and Reynolds under Plaintiff Farley's version of events.

Defendants had no reason to believe Mr. Farley had committed a crime. They received a call about someone suspiciously looking into cars in the Kroger parking lot. That is not a crime. It might evidence someone's intent to break into a car, but merely looking into a car is not itself a crime. And the circumstances did not present the most serious of potential crimes. Since the Supreme Court has "establishe[d] generally that more force is appropriate for a more serious offense and less force is

---

— Officers Stephens, Reynolds, and Benjamin. Officer Stephens arrived first. Mr. Farley claims the first officer to arrive ordered him to ride his bike across Covington Highway. He claims the second officer to arrive was a male officer who ran into him. (Dkts. 62-1 at 42:10–25; 67-4 at 13.) Officer Benjamin is a woman and Mr. Farley testified several times that she arrived after the male officers beat him. (Dkts. 62-1 at 45:17–22; 67-4 at 14.)

By process of elimination — or drawing reasonable inferences in Plaintiff Farley's favor — Officer Reynolds must have been the one to run into him with the patrol car under Plaintiff Farley's version of events. The Court recognizes that Defendants have presented much evidence to the contrary, but the Court accepts Plaintiffs' version of events at summary judgment.

appropriate for a less serious one, this factor strongly weighs" in Mr. Farley's favor. *Lee*, 284 F.3d at 1198.

Plaintiff Farley did not resist or try to flee. Indeed, he claims he was following Officer Stephens's instructions to ride his bike across the street and speak with the officer when Officer Reynolds ran into him. (Dkt. 67-7 ¶ 11.) Based on Mr. Farley's account of the facts, the Court finds that Officer Stephens's efforts to detain Plaintiff Farley by running into him with his patrol car were excessive. Likewise, Plaintiff Farley claims the officers punched, kicked, and tased him while he was lying on the ground and not resisting. Accepting this as true — as the Court must — this constitutes excessive force. *Lee*, 284 F.3d at 1198 (holding that punching and kicking defendant after subduing her constitutes excessive force).

### b. Clearly Established Law

Plaintiff Farley established excessive force in violation of the Fourth Amendment. The second step in the qualified immunity analysis requires the Court to determine whether Defendants are still entitled to qualified immunity because at the time of the incident the law was not clearly established that the force was excessive.

A constitutional right is only clearly established for qualified immunity purposes if "every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks omitted) (alteration adopted). Put differently, "existing precedent must have placed the statutory or constitutional question beyond debate" to give the official fair warning that his conduct violated the law. *Id.*; *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc) ("The critical inquiry is whether the law provided [defendant officers] with 'fair warning' that their conduct violated the Fourth Amendment." (internal quotation marks omitted)). The Supreme Court has explained that the question is "whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *See Saucier v. Katz*, 533 U.S. 194, 194–95 (2001). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202.

A plaintiff typically shows that a defendant's conduct violated clearly established law by pointing to "materially similar precedent from the Supreme Court, [the Eleventh Circuit], or the highest state court in

which the case arose." *Gates v. Kohkhar*, 884 F.3d 1290, 1296 (11th Cir. 2018). While the facts of the case need not be identical, "the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin,* 642 F.3d at 1013. The Supreme Court has also explained that avoiding qualified immunity does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 565 U.S. at 741.

Plaintiffs argue that case law clearly establishes that "beating a handcuffed, non-resisting arrestee, even one that had previously resisted, violates the Fourth Amendment." As the record contains no evidence that the beating continued after Defendants arrested him, such decisions cannot clearly establish the law applicable to Defendants' alleged treatment of Mr. Farley. Excessive force cases can be unique, involving unique defendants and unique factual situations. The Eleventh Circuit has acknowledged the difficulty this poses for plaintiffs in such cases and has recognized "a narrow exception also allowing parties to show that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Lee*, 284

F.3d at 1199 (internal quotation marks omitted).  "Under this test, the law is clearly established, and qualified immunity can be overcome, only if the standards set forth in *Graham* and [Eleventh Circuit case law] inevitably lead every reasonable officer in the defendant's position to conclude the force was unlawful." *Id.* (internal quotation marks omitted) (alterations adopted).

This is such a case.  No reasonable police officer in Officer Reynolds's position would believe it lawful to hit a suspect on a bike with a patrol car as part of an investigatory stop, particularly because he was merely investigating a claim that Plaintiff Farley was "suspiciously looking" into cars in the Kroger parking lot.  He had no evidence Mr. Farley had committed or would commit any crime, let alone a serious crime.  Indeed, Officer Reynolds does not argue that it would have been reasonable to do so.

The same is also true of Plaintiff Farley's claim that both Officer Reynolds and Officer Stephens kicked him and punched while he was lying injured on the ground and not struggling against the officers.  While qualified immunity exists to prevent courts from second-guessing the split-second decisions of police officers, no reasonable officer could believe

this use of force was lawful. The Eleventh Circuit has held that slamming the head of a handcuffed and subdued arrestee against the trunk of a car is "objectively unreasonable and clearly unlawful." *See Lee*, 284 F.3d at 1200. So, too, is kicking and punching a subdued and non-resisting suspect lying on the ground after having been hit by a patrol car.

Based on the facts this Court must accept, the Court finds Defendant Officers Stephens and Reynolds are not entitled to qualified immunity on Mr. Farley's excessive force claim. Because the Court denies their motion for summary judgment on at least one of Plaintiffs' federal § 1983 claims, the Court likewise denies their motion on Count Five for attorneys' fees.[5]

## B.    State-Law Claims & Official Immunity

Plaintiffs also asserts state-law claims against Defendants for assault and battery and intentional infliction of emotional distress.

---

[5] Accepting Plaintiff Farley's version of the facts as true, Defendant Benjamin arrived at the scene after the other officers had subdued him. She neither hit him with her patrol car nor hurt him in any way. Because it is undisputed that she played no role in any of Plaintiff Farley's allegations, the Court thus grants her motion for summary judgment and dismisses her from the case as a party defendant.

Georgia law immunizes government officials "from suit and liability unless they 'negligently perform a ministerial act or act with actual malice or an intent to injure when performing a discretionary act.' " *Speight v. Griggs*, 579 F. App'x 757, 759 (11th Cir. 2014) (citing *Roper v. Greenway*, 751 S.E.2d 351, 352 (Ga. 2013) and GA. CONST. art. I, § II, par. IX(d)). So, under Georgia law, a public officer may be personally liable only for (1) ministerial acts negligently performed or (2) discretionary acts performed with actual malice or an intent to injure. *Graham v. Cobb Cty.*, 730 S.E.2d 439, 444 (Ga. Ct. App. 2012). Official immunity exists to preserve public employees' independence of action without fear of lawsuits and to prevent a review of their judgment in hindsight. *Id.* at 443.

Defendants claim they are entitled to judgment as a matter of law because of Georgia official immunity. (Dkt. 67-1 at 29.) Plaintiffs concede that Defendants' actions were discretionary. So Defendants are entitled to official immunity, absent evidence they acted with actual malice or intent to injure Mr. Farley. The Supreme Court of Georgia has defined actual malice in the context of official immunity to mean a "deliberate intention to do a wrongful act" or "an actual intent to cause

injury." *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999). Actual malice does not, however, "include 'implied malice,' that is 'the reckless disregard for the rights or safety of others.' " *Kinlocke v. Benton*, 257 F. Supp. 3d 1368, 1381 (N.D. Ga. 2017) (quoting *Murphy v. Bajjani*, 647 S.E.2d 54, 60 (Ga. 2007)).

For the same reasons that the Court denies Officers Stephens's and Reynolds's motions for summary judgment on Count Three, the Court denies their motions for summary judgment on Count Six and Count Nine. While official immunity protects Defendants unless they acted with actual malice or intent to harm, the parties dispute whether Officer Reynolds hit Mr. Farley with his patrol car and whether he and Officer Stephens hit and punched him while he was on the ground. These disputes are genuine, material, and critically alter the finding of whether Defendants acted with "actual malice" or intent to injure. *See Skop*, 485 F.3d at 1144 ("Where, as here, the resolution of disputed critical facts determines on which side of this line the officer's conduct fell, summary judgment is inappropriate.").

## IV.  Conclusion

The Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment (Dkt. 60).  The Court **GRANTS** the motion on Count Two of Plaintiffs' Amended Complaint (Dkt. 13) and **DENIES** the motion on Count Three, Count Five, Count Six, and Count Nine.  The Court **DISMISSES** Defendant Benjamin as a party defendant in this matter.

**SO ORDERED** this 23rd day of October, 2019.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE